```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
```

ASHIK ISLAM, MD and AMINUL ISLAM, MD,   **Memorandum & Order**
                                        18-cv-2535(KAM)(LB)
       Plaintiffs,

              -against-

DR. MELISA, Class Professor; PROFESSOR
TIM CORKERY, Speech Department
Coordinator; MICHELLE SABIO, International
Counselor; PROVOST PANAYIOTIS MELETIES;
City University of New York (CUNY) –
York College; NEW YORK CITY TRANSIT
AUTHORITY; MTA NEW YORK CITY TRANSIT;
VISA OFFICER/CONSULAR,

       Defendants.
```
----------------------------------------x
```
**MATSUMOTO, United States District Judge**:

       Ashik Islam, MD, and his father, Aminul Islam, MD, both currently residing in Bangladesh, commenced this *pro se* action on April 26, 2018, alleging violations of Ashik Islam's rights.  The complaint names as defendants New York City Transit Authority ("NYC Transit Authority"), MTA New York City Transit (the "MTA"), the Visa Officer/Consular of the United States Embassy in Dhaka, Bangladesh (the "Visa Officer"), Professor Dr. Melisa ("Dr. Melisa"), Professor Tim Corkery ("Professor Corkery"), International Counselor Michelle Sabio ("Counselor Sabio"), Provost Panayiotis Meleties ("Provost Meleties"), and City University of New York – York College ("CUNY") (collectively, "defendants").  Plaintiffs have paid the

requisite filing fee to bring this action. For the reasons discussed below, the Clerk of Court is directed to dismiss the claims of Aminul Islam from the action without prejudice. For the reasons discussed below, *pro se* plaintiff Ashik Islam's ("plaintiff") claims are dismissed in part.

**BACKGROUND**

On September 15, 2013, plaintiff, who at the time was an international student enrolled in his last semester at CUNY-York College, slipped and fell on a "faulty" escalator at the Jamaica Van Wyck subway station in Queens, New York. (ECF No. 1, Complaint ("Compl.") at 5.) Plaintiff states that he "was in pain and suffered more than four months all together." (*Id.*) He informed his professor, Dr. Melissa, and the Speech Development Coordinator, Professor Corkery, about the incident. (*Id.*) Due to his injury, plaintiff "could not appear for the classes of Speech 101" and "missed over two months" of school, though he submitted his other course work via email. (*Id.*)

According to plaintiff, his injury and subsequent inability to attend class in person set off a series of events that prevented him from receiving his BS Certificate in Pharmaceutical Science, despite having 130 credits, which was 10 credits above the requirement to receive his BS Certificate. First, plaintiff alleges that he informed Professor Corkery that because plaintiff was "an International Student and Fall 2013

2

[was his] last Semester, if [he] [got] a "F" grade, [he would] have to take again 12 Credits for the following Semester." (*Id.*) Nonetheless, Professor Corkery advised plaintiff to appear for his final exam and that he would "take care of it" for plaintiff and "do something positively in favor of [plaintiff]." (*Id.*) Second, plaintiff alleges that Counselor Sabio advised plaintiff to leave the country within "30 days after auditing for [his] graduation." (*Id.*) Following that advice, plaintiff left the United States on January 24, 2014. (*Id.*) Counselor Sabio also informed plaintiff that the college would mail plaintiff his BS Certificate in June 2014. (*Id.*)

Upon returning to Bangladesh, plaintiff was informed that the college could not issue his BS Certificate because he received an "F" in Speech 101. (*Id.* at 6.) Plaintiff explained to Provost Meleties "the whole scenario," including the advice he received from Professor Corkery. (*Id.*) After some back and forth over email, Provost Meleties permitted plaintiff to submit an online assignment for Speech 101. (*Id.*) Plaintiff "set up [his] speech on [his] cell phone and uploaded it through [his] brother's You Tube account," emailed it to Professor Corkery, and informed Provost Meleties. (*Id.*) Professor Corkery allegedly advised plaintiff that this would not suffice because plaintiff "could not provide [his] picture." (*Id.*) Plaintiff informed Professor Corkery that he "could not upload [his]

3

picture" because he "did not know how to do it," and, moreover, that no one told plaintiff that he needed to include his picture with the speech. (*Id.*) Plaintiff also "contacted [Provost Meleties] about this." (*Id.*) Nonetheless, both Provost Meleties and Professor Corkery "rejected [plaintiff's] request to accept [the online submission]." (*Id.*)

Plaintiff alleges that on an unspecified date Provost Meleties advised him to apply to be readmitted to the school to complete three course credits. (*Id.* at 6.) Plaintiff states that he "applied again as an F-1 Student and got accepted," but the woman at the United States Embassy who interviewed plaintiff "did not grant [him] an F-1 Visa." (*Id.*)

Plaintiff states that on December 6, 2017, he received an email from Provost Meleties denying his request to receive his BS certificate. (*Id.* at 4.)

Plaintiff alleges that he is "jobless, lost [his] social status and never will get an official job because [he] [doesn't] have Certificate of Bachelor or Masters Degree and also qualifying age," and his "life is destroyed and became unstable and miserable." (*Id.* at 7.) Moreover, plaintiff explains that he "spent 5 years in US for education and [his] family has spent more than US $125,000.00 for [his] education." (*Id.*)

Plaintiff alleges that the named defendants are "liable for everything." (*Id.* at 7.) Specifically, plaintiff alleges that defendants: (1) violated the Student's Bill of Rights and/or the International Student's Bill of Rights; (2) "not considered Human Rights;" (3) "did not follow the Equal Protection of the Law;" (4) discriminated against plaintiff because he is "from a poor country and different race, color and religion;" (5) "had negligence and misguiding" with respect to plaintiff's course credits, both those from the East West University of Bangladesh and those from CUNY; (6) "destroyed [plaintiff's] educational life;" and (7) "destroyed [plaintiff's] career." (*Id.*) Plaintiff also states that he is: (1) "claiming personal injury" for the accident at the Jamaica Van Wyck subway station and requesting $1.25 million in damages; and (2) "claiming US Dollar 2.5 Millions as a compensation for injury and make my life destroying, unstable and miserable from all the parties involved in these matters." (*Id.* at 7-8.) In addition to seeking money damages, plaintiff seeks for CUNY to issue him a BS Certificate and to be granted a "Visit Visa." (*Id.* at 8, 9.)

**STANDARD OF REVIEW**

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

5

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard does not impose an across-the-board, heightened fact-pleading standard. *Boykin v. KeyCorp,* 521 F.3d 202, 213 (2d Cir. 2008). Nor does it "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by [Federal Rule of Civil Procedure] 8." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010). The plausibility standard does, however, impose some burden to make factual allegations supporting a claim for relief beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 678.

Further, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. *See, e.g.*, *Rene v. Citibank NA,* 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir. 2000) (citations omitted); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action.").

Where, as here, the plaintiff is proceeding *pro se*, courts are required to construe the plaintiff's pleadings liberally. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Although liberally interpreted, a *pro se* complaint still must state a claim to relief that is plausible on its face. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010).

## DISCUSSION

### I. <u>Aminul Islam</u>

The court dismisses the claims of Aminul Islam. To bring suit in a federal court, a plaintiff must establish that he has standing to pursue his claims under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). "To establish that a case or controversy exists so as to confer standing under Article III, a plaintiff must satisfy three elements: (a) the plaintiff must suffer an 'injury in fact,' (b) that injury must be 'fairly traceable' to the challenged action, and (c) the injury must be likely to be 'redressed by a favorable decision' of the federal court." *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (quoting *Lujan*, 504 U.S.

at 560-61); *see also Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm.").

Aminul Islam fails to establish standing because the complaint pertains to him only insofar as his name is in the caption and he has signed the complaint. The complaint does not set forth any facts personal to him or assert any claims on his behalf. Nor does Aminul Islam allege any injury in fact that he claims was caused to himself by the defendants' actions. Moreover, plaintiff cannot bring claims on behalf of his son or represent him in this action. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause."). Therefore, Aminul Islam's claims are dismissed without prejudice.

## II. Plaintiff's Denial of Visa Claim

The court lacks subject matter jurisdiction to consider the claims of plaintiff Ashik Islam that he was improperly denied an F-1 Visa to return to the United States. Under the doctrine of consular nonreviewability, a consular officer's decision to deny a visa application is generally immune from judicial review. *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009). The doctrine of

consular nonreviewability "reflects the plenary power of Congress to prescribe the terms and conditions upon which [non-U.S. citizens] may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention." *Khanom v. Kerry*, 37 F. Supp. 3d 567, 574 (E.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978)). Courts within the Second Circuit have consistently refused to review consular officers' decisions to suspend or deny immigration visas. *See, e.g.*, *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 201 (S.D.N.Y. 2015) (collecting cases). This holds true "even if that decision's foundation was erroneous, arbitrary, or contrary to agency regulations." *Id.* at 200 (quoting *Ngassam v. Chertoff*, 590 F. Supp. 2d 461, 467 (S.D.N.Y. 2008)).

Courts have carved out a limited exception to the consular nonreviewability doctrine "in cases brought by U.S. citizens raising constitutional, rather than statutory, claims." *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 417 (S.D.N.Y. 2006); *see Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015). However, this limited exception does not apply in the instant action as plaintiff is not a United States citizen. Thus, plaintiff's claims against the Visa Officer are dismissed, as is

9

the defendant, the "Visa Officer/Consular" from the U.S. Embassy in Bangladesh.

**CONCLUSION**

Accordingly, the claims of Aminul Islam are dismissed without prejudice.[1] The Clerk of Court is directed to terminate Aminul Islam from the action without prejudice. Plaintiff Ashik Islam's claims against the Visa Officer are dismissed and defendant, the "Visa Officer/Consular" from the U.S. Embassy in Bangladesh, is also dismissed. Plaintiff Ashik Islam's remaining claims shall proceed.

The case is referred to Magistrate Judge Lois Bloom for pretrial supervision. Although the filing fee has been paid to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 269 U.S. 438, 444-45 (1962).

---

[1] District courts generally do not dismiss a *pro se* complaint without granting the plaintiff leave to amend. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000). However, the court shall not grant leave to amend when it would be futile. *See id.*(holding that district court was not required to grant leave to replead where the complaint, liberally read, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe"). Here, Aminul Islam pleaded no facts related to himself and set forth no claims on his own behalf. Further, Aminul Islam cannot bring claims on behalf of his son, Ashik Islam or represent him in this action. *See Iannaccone v. Law*, 142 F.3d at 558. As such, repleading would be futile and the court does not grant leave to replead.

The Clerk of Court is respectfully directed to serve Ashik Islam and Aminul Islam with a copy of this Memorandum and Order, and note service on the docket.

**SO ORDERED.**

```
              /s/
```
**Hon. Kiyo A. Matsumoto**
United States District Judge

Dated:   November 20, 2018
         Brooklyn, New York