UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MD. ASHIK ISLAM and MD. AMINUL ISLAM,

        *Plaintiffs*,

          v.

DR. MELISA, Class Professor; PROFESSOR
TIM CORKERY, Speech Dep't Coordinator;
MICHELLE SABIO, Int'l Counselor;
PROVOST PANAYIOTIS MELETIES; CITY
UNIV. OF NEW YORK (CUNY) – YORK
COLLEGE; NEW YORK CITY TRANSIT
AUTHORITY; MTA NEW YORK CITY TRANSIT;
VISA OFFICER/CONSULAR,

        *Defendants*.
------------------------------------X

**MEMORANDUM & ORDER**

18-CV-2535(KAM)(LB)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Ashik Islam ("Islam") commenced this *pro se* action against (1) the New York City Transit Authority ("NYCTA") and the Metropolitan Transit Authority ("MTA") (the "Transit Defendants"); (2) the City University of New York ("CUNY") and several CUNY employees, including "Dr. Melisa," Professor Tim Corkery ("Corkery"), Michelle Sabio ("Sabio"), and Provost Panayiotis Meleties ("Meleties"), all in their official capacities (the "CUNY Defendants"); and (3) a "Visa Officer" at the U.S. Embassy in Dhaka, Bangladesh, in her official capacity. Islam sought relief against these defendants for, respectively, injuries he sustained in a subway accident, his inability to secure a bachelor's degree from CUNY, and the denial of his request for a visa to enter the United States.

The Court previously dismissed Islam's claims against the Visa Officer based on the doctrine of consular non-reviewability. The Transit Defendants now move (1) to amend their answer and (2) to dismiss Islam's claims as time-barred. Certain CUNY Defendants, similarly, move to dismiss Islam's claims against them (1) as time-barred and (2) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court GRANTS the defendants' motions.

**Background**

The following facts are derived from Islam's complaint and opposition to the defendants' motions, *see Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."), and are accepted as true for purposes of this Memorandum and Order, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Islam studied pharmaceutical sciences at CUNY's York College from Fall 2008 through Fall 2013. (ECF No. 1, Complaint ("Compl.") at 5.) This action arises from injuries Islam sustained in a subway accident during his last semester at CUNY and the ensuing consequences. (*See generally id.*)

On September 15, 2013, Islam slipped and fell on a "faulty" escalator at the Jamaica Van Wyck subway station in Queens, New York. (*Id.*) Islam's nail "came out" and began to

bleed, and he started to feel pain in his head, neck, both shoulders, hip, left leg, and left knee. (*Id.*) Islam self-medicated because he "was in too [much] pain that [he] could not move even to visit any [d]octor and also [didn't] ha[ve] enough money after paying tuition fees for [the] Fall 2013 semester." (*Id.*) Islam "was in pain and suffered more than four months all together." (*Id.*)

Islam informed Dr. Melisa, his Speech 101 professor, and Corkery, the Speech Department coordinator, of his accident. (*Id.*) Islam claims that his injuries prevented him from attending Speech 101 for roughly two months, though he "submitted all [his] other course work assignment through e-mail." (*Id.*) As the Speech 101 exam approached, Islam reached out to Corkery and stressed that as "an International Student [on a student visa]," and because "Fall 2013 [was his] last Semester, if [he] [got] a 'F' grade [in Speech 101], [he would] have to take again 12 Credits for the following Semester." (*Id.*) Corkery advised Islam to appear for his final exam and indicated he would "take care of it" and "do something positively in favor of [Islam]." (*Id.*)

Islam communicated with Sabio, the International Student Advisor, regarding his status in the United States. (*Id.*) Islam audited for graduation in Fall 2013, but the graduation ceremony would not take place until June 2014. (*Id.*)

Sabio advised Islam to leave the United States, noting that as an international student, Islam could not remain in the country for more than "30 days after auditing for [his] [g]raduation," presumably for visa-related reasons. (*Id.*) Sabio told Islam that CUNY would mail his diploma to Bangladesh following the graduation ceremony in June 2014. (*Id.*) Islam followed this advice and left the United States for Bangladesh on January 24, 2014. (*Id.*)

Islam asserts that Sabio and Grace Ann Prescord ("Prescord") – an International Students Advisor who is not named as a defendant – failed to properly "guide" him through the "laws [and] rules of th[is] country" during his time at CUNY. (ECF No. 37, Islam Opp. ("Opp."), at 4.) These advisors "never informed [Islam] about [how to handle] any medical emergency situation." (*Id.*) Nor did these advisors "guide[] [Islam] about how to set up or plan[] for [his] credits so that [he] did not have to take extra credits." (*Id.*) This appears to be a reference to the fact that Islam took 130 credits worth of courses during his time at York College, above the 120 credits required by his degree program.

Prescord also admitted to Islam that, in 2008, she erred by issuing Islam's Form I-20 for only four years, rather than for five years as she does for most international students. (*Id.*) Islam does not specify when this conversation took place.

The opposition, however, indicates that Prescord made this admission "when [Islam] had to renew [his] Form I-20 again to maintain [his] F-1 status," indicating that this conversation took place during his time at CUNY.  (*See id.*)

Upon returning to Bangladesh,[1] Islam learned he had failed Speech 101 and, as a result, CUNY could not award him a bachelor's degree.  (Compl. at 6.)  Islam contacted Meleties, a CUNY Provost, and "explained [to] him the whole scenario," including the advice he received from Corkery that he should appear for the final exam in Speech 101 and that Corkery would "do something positively" in Islam's favor.  (*Id.*)  After some back and forth over email, Meleties, at Islam's request, allowed Islam to submit make-up assignments for Speech 101.  (*Id.*)  Meleties told Islam to submit one ten-to-twelve-minute speech or two five-minute speeches.  (*Id.*)  Islam "set up [his] speech on [his] cell phone," "uploaded it through [his] brother's You Tube account," emailed it to Corkery, and informed Meleties of the completion of the project.  (*Id.*)

---

[1] Islam dates (1) the events preceding his departure from the United States on January 24, 2014 and (2) the most recent denial of a request for a B.S. certificate on December 6, 2017.  (Compl. at 5-6.)  But Islam does not provide dates for his post-departure interactions with Corkery or Meleties regarding the submission of his make-up exam (*see id.* at 6), nor does Islam date his later communications with Meleties regarding his re-admission to the university and steps to obtain his degree.  In a separate filing (ECF No. 27, Letter from Islam), Islam attaches a number of exhibits, including his: (1) York College transcript (*id.* at 3-5); (2) emails to Corkery dated August 26, 2014 and November 3, 2014 (*id.* at 6); and (3) emails to and from Meleties dated from March 19, 2014 through December 7, 2017 (*id.* at 7-23).

Corkery reviewed Islam's submission and advised Islam
that it was deficient, apparently because the submission
contained only audio data, with no picture of Islam.  (*See id.*)
Islam responded that his cell phone did not have the capability
to record videos, that he "could not upload [his] picture"
because he "did not know how to do it," and that no one told him
to include his picture with the speech.  (*See id.*)  Islam
"contacted [Provost Meleties] about [Corkery's refusal to accept
the project as submitted by Islam]."  (*Id.*)  Like Corkery,
Meleties "rejected [Islam's] request to accept [the online
submission]."  (*Id.*)  Islam did not receive an opportunity to
re-submit the speeches.  (Opp. at 4.)

Islam continued to reach out to Meleties to discuss
the possibility of obtaining a bachelor's degree.  (*See* Compl.
at 6.)  Meleties advised Islam to apply to be readmitted to CUNY
to complete the three course credits, presumably those he lost
by failing Speech 101.  (*Id.*)  Islam "applied [to CUNY] again as
an F-1 Student and got accepted."  (*Id.*)  But the visa officer
who interviewed Islam at the United States Embassy in Dhaka,
Bangladesh "did not grant [him] an F-1 Visa."  (*Id.*)  Islam's
most recent interaction with CUNY occurred on December 6, 2017,
when Meleties again denied Islam's request that CUNY award him a
bachelor's degree.  (*Id.* at 4.)

On January 17, 2018, Islam submitted complaints to (1) the New York State Education Department, Office of College and University Evaluation; (2) the U.S. Department of Education, Office for Civil Rights (in New York and Washington, D.C.); and (3) CUNY, Office of the General Counsel. (*Id.* at 6-7.) Islam does not describe the grievances he lodged with each office, or the resolution of said grievances. (*See id.*) Islam just states that he "did not get yet any satisfactory reply from [those offices]." (*Id.* at 7.)

Islam asserts that he is "jobless, lost [his] social status and never will get an official job because [he] [doesn't] have Certificate of Bachelor or Master[']s Degree and also qualifying age," and his "life is destroyed and became unstable and miserable." (*Id.* a 7.) Islam "spent 5 years in US for education and [his] family has spent more than US $125,000.00 for [his] education but [he] ha[s] no career." (*Id.*) Islam argues that "CUNY-York College and [the other defendants] [are] liable for everything" because "they discriminated [against] [him] because [he is] from [a] 3rd [w]orld [c]ountry and different race, color and religion." (Compl. at 7.) Islam seeks $2.5 million in damages, the issuance of his B.S. degree, and a visa to enter the United States as relief. (*Id.* at 8.)

## Procedural History

On April 26, 2018, Islam and his father, Aminul Islam, filed this *pro se* action. (*Id.* at 1.) The *pro se* complaint is unfortunately somewhat difficult to decipher, particularly because it lists several purported causes of action, most of which are not cognizable as claims:

> Sections: 1983 and or Violation of: 1) Student Bill of Rights 2) International Student's Bill of Rights 3) Human Rights 4) Equal Protection of the Law 5) Discrimination 6) Negligence and Misguiding for Set-up Subjects/Credits on Time Frame 6) Destroy Educational Life 7) Destroy Gov. Official Job Service Opportunities 8) Destroy Non-Gov./Private Official Job Service Opportunities and also 9) Personal Injury Claim 10) Compensation from all Parties for making my life Destroying, Unstable and Miserable.

(*Id.* at 4.) However, the complaint's allegations appear to fall into three distinct categories: (1) claims against the Transit Defendants for injuries Islam sustained in his subway accident; (2) claims against the CUNY Defendants for their decision not to award Islam a bachelor's degree; and (3) claims against the Visa Officer for her denial of Islam's request for a visa to return to study in the United States. (*See id.* at 5.)

On September 18, 2018, Islam filed proof of service on "City University of New York – York College," "Michelle Sabio – International Counselor," "Provost Panayiotis Meleties – Vice Counselor," "Professor Tim Corkery – Speech Department Coordinator," and "Dr. Melisa – Class Professor." (ECF No. 9, Executed Summons.) The Attorney General of the State of New

York (the "AG") subsequently entered an appearance on behalf of some, but not all, of the aforementioned defendants:

- CUNY - York College:  York College, a senior college in the CUNY system, is not a "legally cognizable entity apart from CUNY." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam), *cert. denied*, 543 U.S. 987 (2004).  As CUNY is the sole proper institutional state defendant in this action, the AG appeared on its behalf, and the Court construes Islam's claims as against CUNY, not York College.  *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 240 (2015).

- Dr. Melisa:  Islam studied under two professors who could qualify as "Dr. Melisa" in the 2013-14 academic year: Dr. Melisa Jn. Pierre and Dr. Melissa Adeyeye.  (ECF No. 36, CUNY Defendants' Motion to Dismiss ("CUNY Mot."), at 1.) Islam did not specify which professor he intended to sue, so the AG did not appear on behalf of either.  (*Id.*)[2]

- Professor Corkery:  The AG did not appear on behalf of Corkery who passed away in 2015 and, consequently, purportedly lacked capacity to be sued.  (*Id.*)

On November 20, 2018, the Court reviewed Islam's complaint and issued a Memorandum & Order dismissing Islam's complaint in part.  (ECF No. 14, Memorandum & Order ("M&O").) The Court dismissed Aminul Islam as a plaintiff for lack of standing, as the complaint alleged no facts relating to Aminul and did not suggest that Aminul could plead a plausible claim on his own behalf.  (*Id.* at 7-8 (citing *Lujan v. Defenders of Wildlife,* 504, U.S. 555, 559-60 (1992)).)  The Court also dismissed the claims against the Visa Officer, named only to

---

[2] A later filing by Islam appears to identify Melisa Jn. Pierre as the professor Islam seeks to sue.  (ECF No. 18, Opp. to PMC Request, at 5.)

challenge the denial of Islam's visa, based on the doctrine of consular non-reviewability. (*Id.* (citing *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009)).) The Court denied leave to replead these claims as futile. (M&O at 10.)

On March 29, 2019, the Transit Defendants answered Islam's complaint.[3] (ECF No. 24, Answer ("Ans.").) The Transit Defendants denied Islam's allegations and asserted several affirmative defenses. (*See generally id.*) The answer of the Transit Defendants did not assert the statute of limitations as a defense. (*See id.*)

On August 14, 2019, the Transit Defendants moved to amend their answer to assert the statute of limitations as a defense pursuant to Rule 15(a) of the Federal Rules of Civil Procedure (the "Rules") and for judgment on the pleadings pursuant to Rule 12(c). (ECF No. 33, Transit Mot. to Dismiss ("Transit Mot.").) The CUNY Defendants who appeared in this action – CUNY, Sabio, and Meleties – moved to dismiss Islam's

---

[3] Islam's complaint names "New York City Transit Authority . . . and/or . . . MTA, New York City Transit" as defendants in this action. (*See* Compl. at 1.) As Islam elsewhere identifies the MTA as a defendant (*see, e.g.*, Opp. at 3), the Court liberally construes the complaint as against the MTA and its affiliate agency, the NYCTA. Additionally, Islam's filings sometimes name the "NYC Comptroller" and "President," in connection with the NYCTA and MTA, respectively, as defendants in their "official capacit[ies]." (*See, e.g.*, Compl. at 3.) To the extent Islam asserts official capacity claims against these individuals, they are redundant and fail for the same reasons as those against the NYCTA and MTA. *See, e.g.*, *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) ("An official-capacity suit is . . . to be treated as a suit against the entity. . . . Where, as here, the entity also is named as a defendant, the official capacity claims are redundant and are properly dismissed." (internal quotation marks and citation omitted)).

claims as time-barred and for failure to state a claim pursuant
to Rule 12(b)(6).  (CUNY Mot.)  Islam filed a joint opposition
to both motions, but his memorandum merely repeated the facts
alleged in his complaint, with some minor factual enhancement,
and cited no law in support of his opposition.  (*See generally*
Opp.)  The defendants filed replies shortly thereafter.  (ECF
No. 39, Transit Reply; ECF No. 40, CUNY Reply.)

### Standard of Review

        The same standard governs Rule 12(b)(6) motions to
dismiss and Rule 12(c) motions for judgment on the pleadings.
*Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (citing
*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir.
2011)).  To survive either motion, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A
claim is plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Id.*  The court
"accept[s] as true all factual allegations and draw[s] from them
all reasonable inferences; but [the court need not] credit
conclusory allegations or legal conclusions couched as factual
allegations."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)
(internal quotation marks omitted).  "Accordingly, '[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

*Pro se* litigants receive more leeway, and a court reviewing a *pro se* pleading must construe it as raising the strongest arguments it suggests. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)). But this does not excuse *pro se* litigants from compliance with "relevant rules of procedural and substantive law." *Castro v. Simon*, No. 17-CV-6083 (AMD) (LB), 2019 WL 136692, at *3 (E.D.N.Y. Jan. 7, 2019) (citing *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)). The reviewing court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Id.* And, as in any action, the reviewing court must dismiss a *pro se* complaint which fails to satisfy a pleading requirement. *Id.*

## Discussion

Islam's complaint cites various purported causes of action, most not cognizable or more appropriately characterized as claims for damages. (*See, e.g.*, Compl. at 7 (bringing claims for violation of "student bill of rights," "international student bill of rights," and unspecified "human rights"). The thrust of Islam's complaint, however, is that the Transit Defendants negligently caused his accident, and that the CUNY

Defendants discriminated against him in connection with his failed attempts to secure a bachelor's degree. As set forth below, the Court construes Islam's complaint as alleging (1) negligence by the Transit Defendants and (2) discrimination by the CUNY Defendants.

## I.  Transit Defendants

Islam alleges that the Transit Defendants' negligence caused his September 15, 2013 subway accident. The Court construes this allegation as a negligence claim against the Transit Defendants under New York law. The Transit Defendants move (1) under Rule 15(a) to amend their answer to assert the statute of limitations as an affirmative defense and (2) under Rule 12(c) for judgment on the pleadings on the grounds that any claim Islam seeks to assert against the Transit Defendants is procedurally barred by the statute of limitations. (Transit Mot. at 1.) The Court grants both motions.

### a. Motion to Amend

The Transit Defendants move under Rule 15(a) for leave to amend their answer to assert a statute of limitations defense. A party may seek leave to amend its answer to include an omitted defense, which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also, e.g.*, *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (holding that court did not abuse its discretion in

granting defendants leave to amend their answer to include a
statute of limitations defense); *Affiliated FM Ins. Co. v.
Liberty Mech. Contractors, Inc.*, No. 12-CV-5160 (KPF), 2013 WL
4526246, at *8 (S.D.N.Y. Aug. 27, 2013) (granting motion to
amend answer to assert statute of limitations as a defense).

　　　"'The rule in this Circuit has been to allow a party
to amend its pleadings in the absence of a showing by the
nonmovant of prejudice or bad faith.'" *AEP Energy Servs. Gas
Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir.
2010) (quoting *Block*, 988 F.2d at 350).  In determining whether
an amendment would prejudice the plaintiff, courts consider
whether amending the answer to assert a statute of limitations
defense would: "(i) require the opponent to expend significant
additional resources to conduct discovery and prepare for trial;
(ii) significantly delay the resolution of the dispute; or (iii)
prevent the plaintiff from bringing a timely action in another
jurisdiction." *Block*, 988 F.2d at 350.  "Mere delay . . .
absent a showing of bad faith or undue prejudice, does not
provide a basis for a district court to deny the right to
amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d
843, 856 (2d Cir. 1981).

　　　Granting the Transit Defendants' motion would not
prejudice Islam: the parties have expended no time or effort on
discovery to date; the disposition of the case will not be

delayed if the Transit Defendants' motion is granted, and may even be hastened by the application of a legitimate defense; and Islam has not shown that he could have brought his claims in another forum if the Transit Defendants had raised the statute of limitations earlier. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Block*, 988 F.2d at 350. Furthermore, given Islam's delay in bringing this action and the corresponding likelihood that the statute of limitations would apply, amendment would not be futile. The motion to amend is granted. *See Affiliated FM*, 2013 WL 4526246 (collecting cases).[4]

   b. Motion for Judgment on the Pleadings

        The Transit Defendants move for judgment on the pleadings under Rule 12(c) on the grounds that Islam (1) filed his claims outside the applicable statute of limitations and (2) failed to comply with New York's notice-of-claim requirements. *See* N.Y. Pub. Auth. Law § 1212(2) ("[A]n action against the [NYCTA] founded on tort shall not be commenced more than one year and ninety days after the happening of the event upon which the claim is based, *nor* unless a notice of claim shall have been

---

[4] Indeed, the Court could *sua sponte* consider the statute of limitations even without the requested amendment. *See, e.g.*, *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (holding that a district court may dismiss an action *sua sponte* on limitations grounds when "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted" (internal quotation marks omitted)); *Milan v. Wertheimer*, 808 F.3d 961, 963-64 (2d Cir. 2015) (per curiam) (affirming *sua sponte* dismissal of claims based on statute of limitations).

served on the authority within the time limited, and in compliance with all the requirements of section fifty-e of the general municipal law." (emphasis added)); *id.* § 1276(2) (setting forth same restrictions for suits against the MTA). Both arguments have merit.

*First*, Islam did not file this action within the applicable statute of limitations. "Where, as here, a federal court exercises diversity jurisdiction over a claim, that court 'applies the forum state's statute of limitations provisions.'" *Wang v. Palmisano*, 157 F. Supp. 3d 306, 318 (S.D.N.Y. 2016) (quoting *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013)); *see also Schermerhorn v. Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998). New York law requires that a plaintiff commence an action "founded on tort" against the MTA or NYCTA no "more than one year and ninety days" after accrual. N.Y. Pub. Auth. Law § 1212(2) (NYCTA), *id.* § 1276(2) (MTA).

Islam's claim accrued on September 15, 2013, the date of his accident. *Celli v. Metro-North Commuters R.R.*, 891 F. Supp. 124, 126 (S.D.N.Y. 1995) (citing *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 744 (2d Cir. 1979)). Yet, Islam waited over four years, until April 26, 2018, to commence this action. Islam provides no basis for equitably tolling his claims. *See, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("Under New York law, the doctrines of

equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." (internal quotation marks omitted)); *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013) (stating that a federal court sitting in diversity applies forum state's provisions that govern tolling of statute of limitations (citing *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990))).

Thus, Islam's claims against the Transit Defendants are time-barred and must be dismissed. *Lomto Fed. Credit Union v. Dumont*, 116 N.Y.S.3d 488 (Table) (Sup. Ct. 2019) (finding a plaintiff's cause of action for negligence against the MTA, which is controlled by a one-year-and-ninety-day statute of limitations, time-barred); *Bowers v. City of New York*, 61 N.Y.S.3d 190 (Table) (Sup. Ct. 2015), *aff'd*, 47 N.Y.S.3d 409 (App. Div. 2017) ("The statute of limitations for negligence actions brought against the NYCTA is one year and 90 days.").

*Second*, Islam did not satisfy New York's notice-of-claim requirements. "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). "Under New York law, a suit can only be brought against a municipal

corporation if a notice of claim, complying with the New York General Municipal Law § 50-e, is served." *Canete v. Metro. Transportation Auth.*, No. 17-CV-3961 (PAE), 2018 WL 4538897, at *8 (S.D.N.Y. Sept. 20, 2018). This requirement applies to actions against the NYCTA and MTA. *D'Antonio v. Metro. Transp. Auth.*, No. 06-CV-4283 (KMW), 2008 WL 582354, at *6 (S.D.N.Y. Mar. 4, 2008) (citing N.Y. Pub. Auth. Law § 1212(2) (NYCTA); *id.* § 1276(2) (MTA)). "The notice of claim must set forth, *inter alia*, the nature of the claim, and must be filed within ninety days of when the claim arises." *Id.* at *6, n.11 (citing N.Y. Gen. Mun. Law § 50-e).

"The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement." *Chabot v. Cty. of Rockland, New York*, No. 18-CV-4109 (KMK), 2019 WL 3338319, at *9 (S.D.N.Y. July 25, 2019) (citing *Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943, 948 (App. Div. 1989)). "Failure to comply with [the notice-of-claim] requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 794 (citing *Brown v. Metropolitan Transport. Auth.*, 717 F. Supp. 257, 259 (S.D.N.Y. 1989)); *see also Groves v. N.Y. City Transit Auth.*, 843 N.Y.S.2d 452, 453 (App. Div. 2007) ("Timely service of a notice of claim is a condition precedent to the commencement of an action sounding in tort against the [NYCTA] [and] [MTA.]").

Islam does not allege that he served the MTA and/or
the NYCTA with notice of his claim in accordance with state law.
Nor does Islam make a request for an extension of time to file a
notice of claim which, even if made, could not be granted by
this Court. *Humphrey v. County of Nassau*, No. 06-CV-3682, 2009
WL 875534, at *21 (E.D.N.Y. Mar. 30, 2009) (noting that "the
overwhelming weight of authority among district courts in the
Second Circuit" finds that "only certain state courts" may
"consider and . . . grant an application for an extension of
time [to file a notice of claim]").  Islam's claims are,
therefore, also barred for failure to comply with New York's
notice-of-claim requirement. *See, e.g.*, *Chabot*, 2019 WL
3338319, at *9 (dismissing claims for failure to comply with
notice-of-claim requirement); *Canete*, 2018 WL 4538897, at *8
(dismissing, in part, negligence claims against MTA for failure
to comply with notice-of-claim requirements).

## II.  CUNY Defendants[5]

Islam challenges the CUNY Defendants' decision not to
issue him a bachelor's degree because he failed Speech 101,
despite being aware of Islam's plight during the Fall 2013
semester.  The complaint makes the conclusory allegation that
the CUNY Defendants' conduct resulted from discrimination

---

[5] The legal analysis concerning Islam's claims against Sabio and Meleties
applies with equal force to his claims against Corkery and "Dr. Melisa."

founded upon Islam's race, national origin, and religion.[6]  The

Court construes Islam's complaint as bringing a claim against

CUNY for discrimination under Title VI of the Civil Rights Act

of 1964, 42 U.S.C. 2000d *et seq.* ("Title VI") and a claim

against the CUNY employees for a violation of Islam's right to

equal protection under 42 U.S.C. § 1983.[7]  The CUNY Defendants

who have appeared in this action move to dismiss Islam's so-

---

[6] Islam also apparently intends to sue the CUNY Defendants for "negligence and misguiding for set-up subjects/credits on time frame." (Compl. at 4.)  There are several problems with this claim.  *First*, to the extent Islam seeks to bring a negligence claim on this basis – or based on anything which occurred during his time at CUNY – his claim is barred; it was filed outside the three-year statute of limitations for negligence claims.  *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 391 (E.D.N.Y. 2018) (citing N.Y. C.P.L.R. § 214; *Chase Sci. Research Inc. v. NIA Grp. Inc.*, 96 N.Y.2d 20, 30–31 (2001)); *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 490 (E.D.N.Y. 2016).  *Second*, to the extent Islam might seek to assert that post-departure events give rise to a timely claim for negligence – those being limited to his recent conversations with Meleties – he provides no support for any duty which CUNY or Meleties would owe him or any injury allegedly caused by CUNY or Meleties' negligence during this period.  *Compare Gani v. State*, 988 N.Y.S.2d 411, 423 (Ct. Cl. 2014).  *Finally*, the Court need not decide whether Islam must bring a negligence claim against CUNY in the Court of Claims.  *See Gerrish v. State Univ. of N.Y. at Buffalo*, 12 N.Y.S.3d 703, 705 (App. Div. 2015); *McGuinness v. N.Y. State Workers' Comp. Bd.*, 41 A.D.3d 557 (N.Y. App. Div. 2007).

[7] The Court considered whether Islam's complaint could be construed as stating claims against the CUNY Defendants under the New York State Human Rights Law ("NYSHRL") or New York City Human Rights Law ("NYCHRL").  Any such claims would be barred by the Eleventh Amendment.  *See, e.g.*, *Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at *5 (S.D.N.Y. Mar. 18, 2019); *Schwartz v. York Coll.*, No. 06-CV-6754 (RRM)(LB), 2009 WL 3259379, at *2 (E.D.N.Y. Mar. 31, 2009).  Furthermore, construing these claims as against the employees' in their individual capacities such that they would not be barred would not make them any more viable.  The claims would remain time-barred, *see, e.g.*, *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of limitations to NYSHRL and NYCHRL claims), and require notice and facts showing some discriminatory nexus, which – as the Court discusses below – are conspicuously absent from Islam's complaint, *see, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (noting that to state a claim under the NYSHRL or NYCHRL, the plaintiff must allege, *inter alia*, that "the [challenged] action occurred under circumstances that give rise to an inference of discrimination").

construed claims (1) as time-barred and (2) for failure to state a claim. Islam's claims are dismissed on both grounds.

A. <u>Statute of Limitations</u>

Both of Islam's claims against the CUNY Defendants are subject to three-year statutes of limitations. *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 234 (E.D.N.Y. 2010) ("'Although Title VI does not contain an express statute of limitations, in New York, such claims falls within the three-year statute of limitations applicable to personal injury causes of action.'" (quoting *Al-Haideri v. Trustees of Columbia Univ.*, No. 07 Civ. 106 (LTS) (DCF), 2007 WL 2187102, at *2 (S.D.N.Y. 2007)); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under . . . [§] 1983 in New York is three years."). Since Islam filed his complaint on April 26, 2018, any claims accruing prior to April 26, 2015 are time-barred.

"'While state law supplies the statute of limitations period, federal law determines when a federal claim accrues.'" *Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011) (quoting *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998)). "Under the federal 'discovery' rule, a cause of action accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id.* (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). This bars Islam

from bringing any claims for conduct which accrued during his time at CUNY between Fall 2008 and Fall 2013, and immediately thereafter, including (1) his receipt of an "F" in Speech 101; (2) Corkery and Meleties' decision not to grant Islam credit for his make-up assignments in Speech 101; (3) CUNY's decision not to award Islam a bachelor's degree, due to his failure to complete Speech 101; and (4) any potential issues arising out of Sabio or Prescord's advice to Islam and their assistance in managing his status in the United States.

Islam appears to contend that his time to commence an action should be tolled because he "was in continuous motion with the matter with [Meleties] for the past few years," ending with Meleties' December 6, 2017 denial of Islam's request that CUNY award him a bachelor's degree. (Opp. at 4.) Islam does not specify which legal theories underlie his argument, but the Court believes Islam seeks to invoke either (a) the continuing violation doctrine or (b) equitable estoppel. Islam cannot rely on the continuing violation doctrine because it only applies where there is a pattern of *discriminatory* conduct which, as the Court details below, does not appear to have been the case, and because the events identified by Islam are all discrete events which are "easy to identify" and thus not evidence of a continuing violation. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) (internal quotation marks

omitted).  Whether equitable tolling applies requires more discussion.

"[E]quitable tolling is only appropriate in [] rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his [or her] rights." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal citations and quotation marks omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80-81 (internal quotation marks omitted).

This is not such an exceptional case that equitable tolling should apply.  Islam did not pursue judicial remedies or file other pleadings during the period he seeks to have tolled; he does not allege he was unaware of his cause of action due to any misleading conduct by the defendants; and he does not allege any impairment beyond his Fall 2013 injury (which allegedly caused him to suffer for four months) to justify his delay in bringing this action.  *See Sporten v. Bridgehampton Road Races, LLC*, No. 13-cv-1730, 2014 WL 923265 (E.D.N.Y. Mar. 10, 2014) (explaining that equitable tolling is "generally reserved" for

23

cases where the plaintiff (1) actively pursued judicial remedies but filed a defective pleading during the specified time period, (2) was unaware of his cause of action due to the defendant's misleading conduct, or (3) was prevented from filing an action in a timely fashion due to medical condition or mental impairment (citing *Zerilli-Edelglass*, 333 F.3d at 80–81)). There is, in short, no basis to toll the time Islam had to file his claims against the CUNY Defendants.

　　B. Failure to State a Claim

To the extent any of Islam's claims against the CUNY Defendants are not time-barred, they nevertheless fail to state a claim upon which relief may be granted.

　　i. *Title VI*

Islam alleges that he was subject to discrimination as a student at CUNY. The Court, consequently, construes Islam's complaint as stating a Title VI claim against the university.

"Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012); *see also* 42 U.S.C. § 2000d; CUNY Mot. at 12, n.7 (conceding that CUNY receives federal funding). To state a claim under Title VI, "a plaintiff must allege, *inter alia*, (1) that the defendant discriminated against him on the basis of race; (2) that that discrimination was intentional; and (3) that

discrimination was a substantial and motivating factor for the defendant's actions." *See Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)).

For a claim "to be cognizable under Title VI, [the] defendants' discriminatory intent must 'actually play[] a role in' and have a 'determinative influence' on the adverse action." *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 556 (E.D.N.Y. 2012) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Consequently, to survive a motion to dismiss, the plaintiff "must do more than recite conclusory assertions"; he "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). "[B]are allegations [of discrimination] do not present circumstances that 'give rise to an inference of unlawful discrimination.'" *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Islam's complaint describes the series of unfortunate events which prevented him from obtaining a bachelor's degree and makes the conclusory assertion that Islam was discriminated against because he was from a "3rd World Country and [of]

different race, color and religion." (Compl. at 7.) The CUNY Defendants argue in their motion that there is not "an iota of factual support for this conclusive declaration . . . anywhere else in the Complaint." (CUNY Mot. at 13.) Islam's opposition seeks to remedy that deficiency by noting that discrimination "is an issue which cannot be touch[ed], fel[t][,] or c[aught]," and by labeling each negative event as "circumstantial" evidence of discrimination. (*Id.* at 2, 5.) Islam also states that color, race, and national origin were "substantial or motivating factor[s] for the defendant[s'] actions." (*Id.*)

The Court sympathizes with Islam's struggles in obtaining a degree. The CUNY Defendants, however, are correct that Islam's papers plead no facts from which the Court could infer that a discriminatory animus played a role in the CUNY Defendants' conduct. None of the facts alleged suggest that any of the CUNY Defendants' referenced or considered Islam's race, national origin, or color; treated individuals of other races, national origins, or colors differently and more favorably; or expressed any sort of animus towards Islam or were motivated by any unlawful considerations whatsoever. *See, e.g.*, *Doe by & Through Doe v. Brittonkill Cent. Sch. Dist. Bd. of Educ.*, No. 18-CV-0142 (GTS) (TWD), 2018 WL 6622191, at *14 (N.D.N.Y. Dec. 18, 2018) ("Nowhere in either the Amended Complaint or his opposition papers does Plaintiff allege that any Defendant

referred to his race, nor does he recite any other fact from which race-based discriminatory intent reasonably could be inferred.").  To the contrary, Islam's filings suggest that the CUNY Defendants' conduct was motivated by genuine concerns, for instance, Islam's poor performance in Speech 101 (*see, e.g.*, Opp. at 3 ("[Corkery] only gave me an F Grade just because I could not attend or submit assignment in Speech class.")), or restrictions applicable to all international students (*see, e.g.*, Compl. at 5 ("[Sabio] also said that *being an international student* I have no permission to stay more than 30 days after auditing [for graduation]." (emphasis added)).

"Furthermore, to state a claim arising under Title VI, the plaintiff must 'allege that the [defendant] had notice of the complained-of discrimination.'" *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4546 (SJF) (AYS), 2017 WL 3017189, at *9 (E.D.N.Y. July 11, 2017) (quoting *Evans v. Columbia Univ. in the City of New York*, No. 14 Civ. 2658, 2015 WL 1730097, at *3 (S.D.N.Y. Apr. 13, 2015)).  Islam does not allege CUNY had notice of the alleged discrimination, and only notes that he filed a complaint raising unspecified issues on January 17, 2018, roughly four years after leaving the United States and well after his time at CUNY.  Islam's apparent failure to provide notice to CUNY is also fatal to his claim. *See Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d

522, 527 n.1 (S.D.N.Y. 2013) ("[E]ven if Plaintiff adequately

had pleaded discrimination, his apparent failure to notify

[Defendant educational institution] officials of the alleged

discrimination would be fatal to [his] Title VI . . . claims.").

Based on the foregoing, Islam's Title VI claim must be

dismissed. *See, e.g.*, *Williams v. City Univ. of New York,*

*Brooklyn Coll.*, No. 10-CV-2127 (CBA) (LB), 2011 WL 13157370, at

*4 (E.D.N.Y. Feb. 10, 2011) (dismissing Title VI claim where

complaint was devoid of any remarks "reflecting discriminatory

animus" and "alleges nothing more than that [the plaintiff] is

African American" and that the college simply implemented its

own policies against him); *Goonewardena v. New York*, 475 F.

Supp. 2d 310, 328-29 (S.D.N.Y. 2007) (dismissing Title VI claim

because plaintiff "failed to allege that the school acted with

the requisite discriminatory intent," "fail[ed] to allege any

acts of discrimination . . . and fail[ed] to allege that he

reported any incidents of discrimination to CUNY officials");

*Tripp v. Long Island Univ.*, 48 F. Supp. 2d 220, 224 (E.D.N.Y.

1999) (dismissing Title VI claim because the plaintiff "offered

no reasons other than her conclusory allegations to substantiate

her claim that [her professor] acted with a racially

discriminatory intent" in giving her a poor grade).

ii. *Section 1983*

Islam's complaint suggests that he also intends to sue the individual CUNY employees for discrimination.  But Islam cannot assert Title VI claims against individuals.  *See Russell v. Cty. of Nassau*, 696 F. Supp. 2d 213, 238 (E.D.N.Y. 2010) ("Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funds.").  The Court may, however, construe Islam's allegations as alleging a § 1983 claim against the individual CUNY defendants, all sued in their official capacities, for the violation of his rights under the Equal Protection Clause.

To state a claim under § 1983, a plaintiff must show (1) that some person deprived him of a federal right and (2) that the person depriving him of that right acted under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).  This statute "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

As an initial matter, "when the defendant sued for discrimination under . . . § 1983 is a municipality — or an individual sued in his [or her] official capacity — the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."  *Patterson*, 375 F.3d at 226 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991);

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 693 (1978)). Islam made no such showing. Moreover, "[t]o the extent that [Islam] brings claims for damages against the Individual [CUNY] Defendants in their official capacities as representatives of CUNY or York College, such claims are also barred by the Eleventh Amendment." *Bahr v. City Univ. of New York/York Coll.*, No. 15-CV-4380 (MKB), 2016 WL 8711060, at *5 (E.D.N.Y. Dec. 9, 2016); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011) (explaining that federal courts cannot entertain a private person's suit against a State absent waiver or valid abrogation of a State's Eleventh Amendment sovereign immunity).

Yet, the Court will address whether Islam could otherwise satisfy the requirements of § 1983 to the extent that he would seek to bring § 1983 claims against the CUNY employees in their individual capacities for violating his right to equal protection. The Fourteenth Amendment provides that no state shall deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "It is well established that '[p]roof of racially discriminatory intent or purpose is required' to show a violation of the Equal Protection Clause." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (quoting *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003)); *see also Phillips v. Girdich*, 408

F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . , a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."). To plead a plausible equal protection violation, the plaintiff must thus "present facts sufficient to support an inference of intentional . . . discrimination." *Howard v. City of New York*, 602 F. App'x 545, 557 (2d Cir. 2015). A naked allegation of discriminatory animus is insufficient to state a plausible equal protection claim. *See, e.g.*, *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (finding "naked allegation" of discriminatory intent insufficient to constitute claim for relief).

As detailed above, Islam's complaint pleads no facts from which the Court could infer a discriminatory motive behind the defendants' conduct and thus fails to state a plausible claim.[8] Islam's § 1983 claims must, therefore, also be

---

[8] An alternative theory of § 1983 liability would be under the Due Process Clause. "New York law recognizes an 'implied contract between [a college or university] and its students,' requiring 'the academic institution [to] act in good faith in its dealing with its students.'" *Oladokun v. Ryan*, No. 06 CV 2330 (KMW), 2007 WL 3125317, at *4 (S.D.N.Y. Oct. 23, 2007) (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 414 (N.Y. 1980)). "'Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection.'" *Id.* (quoting *Branum v. Clark*, 927 F .2d 698, 705 (2d Cir. 1991)). Therefore, "a Rule 12(b)(6) dismissal of a student's claim is improper where the contention is that the institution's action was 'motivated by bad faith or ill will unrelated to academic performance.'" *Branum*, 927 F.2d at 705 (quoting *Clements v. County of Nassau*, 835 F.2d 1000, 1004 (2d Cir. 1987)). This claim would also fail, however, as Islam's allegations raise no inference that "bad faith or ill will" played a role in CUNY's dealings with him. *Compare Oladokun*, 2007 WL 3125317, at *4.

dismissed. *See, e.g.*, *Morales v. New York*, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014) (compiling cases demonstrating the necessity of pleading facts raising the inference of intentional discrimination); *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-3793, 2014 WL 890482, at *2 (S.D.N.Y. Feb. 27, 2014) (granting 12(b)(6) motion to dismiss a § 1983 equal protection claim because the complaint failed to allege facts giving rise to inference of discrimination); *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *12 (S.D.N.Y. Oct. 13, 2010) (dismissing an equal protection claim because the plaintiff failed to allege any similarly situated individuals who were treated differently).

### III. Remaining Defendants

The Court also addresses Islam's claims against the two remaining defendants – Dr. Melisa and Corkery. The Court construes Islam as naming Dr. Melisa Jn. Pierre as a defendant in this action and dismisses Islam's claims against her as frivolous because they are clearly time-barred, *Cummings v. Giuliani*, No. 00-CV-6634, 2000 WL 1597868, *2-3 (S.D.N.Y. Oct. 24, 2000) (dismissing *sua sponte* fee-paying *pro se* plaintiff's claims that were clearly time-barred); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (action frivolous where "factual contentions are clearly baseless," as when "the claim is based on an indisputably meritless legal theory," e.g.,

where "a dispositive defense clearly exists on the face of the complaint"), having been brought over four years after Islam last interacted with Dr. Melisa, *see Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) (finding *sua sponte* dismissal of section 1983 claim based on statute of limitations "especially appropriate where ... the injuries complained of [by the *pro se* plaintiff] occurred more than five years before the filing of the Complaint"). They would, in any event, fail to state a claim upon which relief may be granted for the reasons described in more detail above.

The Court may also need to dismiss this action against Corkery for lack of capacity to be sued, pending receipt of certain information from the AG. Rule 17(b)(1) provides that the capacity of an individual (not acting in a representative capacity) to be sued is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). If Corkery's last domicile was New York, he would lack capacity to be sued. *Lawson v. L.R. Mack, Inc.*, 282 N.Y.S. 982, 983 (App. Div. 1935) ("A deceased person cannot be a party to an action at law."); *Livshits v. Raginskiy*, 735 N.Y.S.2d 579, 580 (App. Div. 2001). And if Islam filed his claims after Corkery died, the Court could not construe them as against Corkery's estate, and dismissal would be required. *See Johnson v. Schiff*, No. 11-CV-0531 (MAD) (TWD), 2013 WL 5466218, at *5 (N.D.N.Y. Sept. 13,

2013), *rep. & rec. adopted*, No. 11-CV-00531 MAD, 2013 WL 5466638
(N.D.N.Y. Sept. 30, 2013).  The Court will, consequently, direct
the AG to provide information confirming the date of Corkery's
death and his domicile at the time of his death.

## IV.  Motion to Appoint Counsel

In his opposition, Islam appears to request
appointment of counsel in this action.  (*Id.* at 6.)  The Court
respectfully denies Islam's request.  It is well-settled that
there is no right to counsel in a civil case, *Martin-Trigona v.
Lavien*, 737 F.2d 1254, 1260 (2d Cir. 1984), and a court need
only appoint counsel after finding that a plaintiff's case meets
"a threshold showing of some likelihood of merit," *see Johnston
v. Genessee Cnty. Sheriff Maha*, 606 F.3d 39, 41 (2d Cir. 2010).
Islam's case does not meet this standard.[9]

## V.  Leave to Amend

"'A *pro se* complaint should not be dismissed without
the Court granting leave to amend at least once when a liberal
reading of the complaint gives any indication that a valid claim
might be stated.'"  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

---

[9] Islam, alternatively, requests leave to secure counsel.  (Opp. at 6.)  Islam
does not appear to request a stay of this action or the Court's ruling on the
instant motions.  Even if Islam did intend to make such a motion, however, he
provides no basis for a stay.  The instant motions have been pending for
almost six months, without any indication that Islam is actively seeking the
assistance of counsel.  Islam also claims he cannot secure counsel without
traveling to the United States, yet he provides no timetable for such a trip.
In any event, it does not appear that the assistance of an attorney could
remedy the deficiencies in Islam's complaint.

2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.

2010)).  "However, 'leave to amend a complaint may be denied

when amendment would be futile.'"  *Id.* (quoting *Tocker v. Philip*

*Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)).  "'Futility' is

a valid reason for denying a motion to amend . . . where it is

'beyond doubt that the plaintiff can prove no set of facts in

support' of his amended claims."  *Pangburn v. Culbertson*, 200

F.3d 65, 70-71 (2d Cir. 1999).

          Unlike cases where leave is warranted, there is no

"suggest[ion] that [Islam] has a claim that [he] has

inadequately or inartfully pleaded and . . . should therefore be

given a chance to reframe."  *Cuoco v. Moritsugu*, 222 F.3d 99,

112 (2d Cir. 2000).  Islam's claims against the Transit

Defendants are clearly time-barred.  *See, e.g.*, *Tompkins v.*

*AlliedBarton Sec. Servs.*, 424 F. App'x 42, 43 (2d Cir. 2011)

(finding amendment futile where it was "clear from the record

that . . . the claim was untimely").

          Amendment of Islam's claims against the CUNY

Defendants would similarly be futile, either because they are

time-barred, *see id.*, or because it is clear that Islam will not

be able to plead any nonconclusory allegations supporting an

inference of discrimination, *see, e.g.*, *Johnson v. New York*

*Univ.*, No. 18-3305, 2020 WL 502388, at *3 (2d Cir. Jan. 31,

2020) (finding amendment futile where complaint alleged no

"nonconclusory facts showing that NYU had discriminated against [plaintiff]"). Despite filing several submissions detailing his interactions with the CUNY Defendants both before and after being placed on notice by the defendants that he must plead facts from which the Court could infer discrimination (*see, e.g.,* Compl.; PMC Opp.; ECF No. 27, Letter from Islam; Opp.; ECF No. 41, Letter from Islam), Islam's allegations have remained substantively identical; he has pleaded no facts supporting any purported discrimination and instead has simply asserted that:

> [D]iscrimination is an issue which cannot be touch, feel or catch. It is a feeling of sensation, realization and understanding of the attitude or behavior from others. All I am trying to say that how, when and where discrimination had taken place. Therefore, I am trying to explain again and again the fact of discrimination which I am stating below[.]

(Opp. at 2.) The Court has reviewed all the events, as explained by Islam on several occasions, and assumed that they are true; the Court finds it beyond doubt that he could not allege facts showing his entitlement to relief.

## Conclusion

For the reasons set forth above, the Court hereby GRANTS (1) the Transit Defendants' motion to amend their answer and motion for judgment on the pleadings and (2) the CUNY Defendants' motion to dismiss. The NYCTA, the MTA, CUNY, Sabio, Meleties, and Dr. Melisa are dismissed from this action. The AG is directed to submit a letter by April 14, 2020, indicating the

date of Corkery's death and his domicile at the time of his death, including necessary proof.

The Clerk of Court is directed to serve a copy of this Memorandum and Order on *pro se* plaintiff and to note service on the docket. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:    March 24, 2020
          Brooklyn, New York

                                    /s/
                        _____
                        Hon. Kiyo A. Matsumoto
                        United States District Judge